United States Bankruptcy Court
Eastern District of Michigan
Southern Division- Flint

In re:
MARYANN MACGILLIVRAY, INC.,  Case No. 03-35133-WS
        Debtor.  Chapter 7
_____/

**OPINION FINDING SUBORDINATION AGREEMENT COVERS ONLY THE TERM LOAN AND ORDERING A STATUS CONFERENCE ON VARIOUS REMAINING ASPECTS OF THE ISSUE PRIOR TO THE DISBURSEMENT OF MONIES**

Debtor is a corporation of which Maryann MacGillivray, the daughter of Kenneth C. MacGillivray, is the sole shareholder. Debtor filed its petition for relief under Chapter 7 on December 30, 2003. Pursuant to Order of this Court, the bankruptcy trustee sold the mortgaged property with liens transferred to sales proceeds. The net proceeds from the sale, approximately $537,592.88 are being held by the trustee. This matter is before the Court is the Trustee's motion to disburse those monies. The Court has concluded the subordination agreement was valid and that it covered the initial debt of $188,500 and the interest therefrom, totaling $213,302.79. The Court has concluded that the subordination agreement does not cover the line of credit or the automobile loan, but also that there are further issues to be later aired and disposed of..

**I. Facts**

The stipulated facts found in the joint final pretrial order are as follows. On April 5, 1995, Kenneth C. MacGillivray gave Debtor a promissory note for $500,000. Kenneth C. MacGillivray was the sole shareholder of the debtor, whose shares were purchased or redeemed by Debtor for the sum of

$1.1 million dollars under the terms of an April 5, 1995, negotiable, secured, promissory note. The promissory note was secured by a mortgage on the property at 1200 Averill Street, Flint, Michigan owned by Debtor. Subsequent to the purchase of the Kenneth C. MacGillvary stock by Debtor, Maryann MacGillivray became and remained at all times relevant to this case, the sole shareholder, owner, and principal operating and executive officer of the debtor. Kenneth MacGillivray died later in 1995. On October 20, 1994, Kenneth MacGillivray had executed his Last Will and Testament, which had a provision in Article IV pouring over the estate's assets to the contemporaneously created Kenneth C. MacGillivray Trust. The beneficiaries of that trust are the widow of Kenneth C. MacGillivray during her lifetime, and on her death MaryAnn MacGillivray (60%), and her brothers Kenneth MacGillivray Jr. (10%) and William MacGillivray (30%). A copy of the will was filed with the Genesee County Probate Court after his death and the administration of the estate proceeded as an independent probate. Maryann MacGillivray was appointed personal representative of the probate estate. There was no order entered by the probate court transferring or assigning the ownership of the promissory note and mortgage in favor of the debtor from Kenneth C. MacGillivray to the Kenneth C. MacGillivray Trust and there is nothing recorded evidencing a transfer of the mortgage to the Kenneth C. MacGillivray Trust. Further, there was no specific documentation executed by Maryann MacGillivray, as personal representative of the probate estate, transferring or conveying the interest in the debtor's promissory note and mortgage (or indeed any other appropriate assets) to the Kenneth C. MacGillivray Trust, and it is not clear enough whether the probate of the estate somehow itself operated to achieve such result.

Citizen's Bank was served a copy of the Last Will and Testament and Trust Agreement of Kenneth C. MacGillivray on July 7, 1997. After Kenneth C. MacGillivray's death, Debtor made fifteen

payments to his estate totaling $138,387.11 on the $1.1 Million dollar promissory note, with the last payment being a $2,000 check dated June 1, 2000. From July 2000 to November 2000, Debtor made five payments of $2,000 each to Ruth MacGillivray, the widow of Kenneth MacGillivray, as payments on the $1.1 million dollar promissory note.

On February 9, 2001, Debtor executed a $188,500 term note, a $140,000 line of credit note, and to secure repayment of same a mortgage on the property commonly known as 1200 Averill Street, Flint, Michigan, to Citizens Bank . Debtor also signed a commercial security agreement in favor of Citizens Bank. The mortgage was recorded on October 16, 2001. On February 9, 2001, Maryann MacGillivray also signed a subordination agreement, in her capacity as personal representative of the Estate of Kenneth C. MacGillivray. The subordination agreement was recorded on October 16, 2001. No one signed the subordination agreement on behalf of the trust., nor apparently did Maryann MacGillivray request an Order from the probate court authorizing her to sign the subordination agreement on behalf of the probate estate, if indeed she needed to.

It was the testimony of Maryann MacGillivray that only the $188,500 note would be secured by the February 9, 2001, mortgage on the Averill Street property and that the subordination agreement would give Citizen's Bank's mortgage on the $188,500 note priority over the mortgage to Kenneth C. MacGillivray on the Averill Street property.

At the time the subordination agreement was signed, the balance owed on the $1.1 million dollar note did not exceed $750,000. On June 9, 2001, a new promissory note was signed by Maryann MacGillivray as President of Debtor renewing the $140,000 Citizens Bank line of credit and increasing it to $200,000. Citizen's Bank intended that the $200,000 line of credit be secured by the Averill Road

3

Property. There was no new mortgage or subordination agreement executed in connection with the $200,000 line of credit. Further, on September 13, 2001, Debtor gave Citizen's Bank a promissory note in the amount of $5,319, with no new mortgage or subordination agreement executed in connection with the note. All of the Citizens Bank loans to Debtor were made in connection with Debtor's business purposes and were not made to the Kenneth C. MacGillivray Trust or any of the beneficiaries.

On December 31, 2003, Citizens Bank assigned the $188,500 term note, the $200,000 line of credit note, and the $5,319 note to 422, LLC in exchange for a payment of $100,000. At the time of the assignment, the balance on the notes was $213,302.79, $218,487.73, and $2,431.33 respectively. Citizens Bank also contemporaneously assigned its mortgage on the 1200 Averill Road, Flint, Michigan property to 422, LLC, which assignment was then recorded in the Register of Deeds on January 2, 2004.

Citizens Bank (not Maryann MacGillivray) was named the successor trustee (to the deceased Kenneth C. MacGillivray) under the Kenneth C. MacGillivray Trust, but never qualified or undertook its duties as such and never acted in that capacity for the trust, nor apparently did it formally notify any representative or beneficiary of the trust (or the probate estate) that it would or would not decline to as such. After Kenneth C. MacGillivray's death, Maryann MacGillivray seemingly assumed to act as trustee, even though she was not named as such, and never properly or formally achieved that status with what legal effect is not decided here.

On September 5, 2003, Maryann MacGillivray, individually, filed a petition for relief under Chapter 7. Debtor in this case filed its petition for relief under Chapter 7 on December 30, 2003. As noted by Order of this Court and without objection by 422, LLC, or the Kenneth C. MacGillivray Trust, the bankruptcy trustee in this case sold the property at 1200 Averill Road, Flint, Michigan, with liens

transferred to sales proceeds. The net proceeds from the sale, approximately $537,592.88, are being held by the trustee.

No agent or other person on behalf of Citizens Bank examined the Probate Court file for the Kenneth C. MacGillivray estate prior to making the term loan, line of credit loan, or the execution of the subordination agreement. A copy of the Kenneth C. MacGillivray Trust was not filed with the Probate Court.

## II. Discussion

First, this Court must determine whether the subordination agreement was enforceable. 11 U.S.C. § 510(a) states: "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." When determining property interests, this Court references applicable state law and, barring a federal interest, property interests are not analyzed differently when a party is involvement in a bankruptcy case. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979). A subordination agreement enforceable under state law will be upheld by a bankruptcy court. *In re Cliff's Ridge Skiing Corp.*, 123 B.R. 753, 764 (Bankr. D. Mich. 1991); *Robinson v. Howard Bank* (*In re Kors, Inc.*), 819 F.2d 19, 24 (2nd Cir. 1987).

Under the Restatement, "[a] mortgage, by a declaration of its mortgagee, may be subordinated in priority to another interest in the mortgaged real estate, whether existing or to be created in the future, if the interest to which the mortgage is being subordinated is described with reasonable specificity in the declaration." Restatement, Third, Property (Mortgages), § 7.7 Under Michigan law, a subordination agreement is valid when based on a valuable consideration. *Levitz v. Capitol Sav. &*

5

*Loan Co.*, 255 N.W. 166, 166 (Mich. 1934). "The consideration necessary to support a contract is a 'benefit to the promisor or a detriment to the promisee.'" *Id.* (citations omitted). Because the U.C.C. has little guidance on subordination agreements, they are ruled under general principles of law and equity, and mainly under general contract principles. *Conagra, Inc. v. Farmers State Bank*, 602 N.W.2d 390, 401 (Mich. Ct. App. 1999); MCL 440.1103. Given the recited facts, there is no real question but that the subordination agreement was made for valuable consideration.

What then remains to be decided is (1) what amounts or items the subordination agreement covered, and (2) whether the signature of Maryann MacGillivray in her capacity of personal representative of Kenneth C. MacGillivray's estate rather than as Trustee of the Kenneth C. MacGillivray Trust had any bearing on the validity of the agreement. There were three separate notes that were made between Debtor and Citizen's Bank: (a) a $188,500 term loan was extended contemporaneous with the subordination agreement on February 9, 2001. This loan, complete with interest now has a balance of approximately $213,302.79; (b) a vehicle note was entered into on September 13, 2001, in the amount of $5,319. This note was secured by the automobile, however, it was not perfected, and the car was repossessed and sold, and there is now a deficiency balance in the amount of $2,431.33; and (c) a $200,000 line of credit (an extension of a previous $140,000) was extended to Debtor. This note was signed on June 9, 2001. It was not perfected as such, and the balance owed was $218,487.73.

The $188,500 term loan was specifically and properly subordinated to the mortgage. It was extended contemporaneously with the subordination agreement and described in general terms in the subordination agreement. Further, Maryann MacGillivray testified that it was her understanding and intent that the term loan was to be placed in first position.

6

While the vehicle note and the line of credit were generally described in the subordination agreement, they were in fact essentially future indebtedness. According to the Restatement, "[s]ubordination is more complex when the mortgagee desires to yield priority to some interest that is to be created in the future. It is clear that such subordination is possible. If an agreement, a clause in the mortgage, or a separate statement describes with reasonable specificity the interest that is to gain priority and declares that the mortgage will become subordinate to it, the subordination agreement will be specifically enforced." Restatement 3d of Property (Mortgages), § 7.7, comment b. In the subordination agreement, the subordinated indebtedness is listed as, "in the amount of $750,000." (Subordination Agreement, p. 1). Inclusion of unspecified individual and substantively different items or their undifferentiated individual amounts in some total, without more, does not meet the reasonable specificity standard- a standard which among other things is designed to give fair notice to third parties in such cases.

Furthermore, Maryann MacGillivray testified that it was never discussed between the parties that the line of credit would subordinate the mortgage and it was not her intent for it to be covered by the subordination agreement.

Under Michigan law, a contract is ambiguous if its terms are reasonably susceptible of more than one interpretation. *Cole v Ladbroke Racing Michigan, Inc*, 614 N.W.2d 169, 176 (Mich.App. 2000). Where contractual language is ambiguous, the language of a contract is to be construed against the drafter. *State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 351 (Mich. 1996). Because Citizens Bank, drafter of the contract, did not clearly indicate that the line of credit was covered in the subordination agreement, and it was not the intent of Maryann MacGillivray for it to be subordinate to the mortgage, this Court concludes the subordination agreement must be construed not to

7

cover the line of credit (or the vehicle loan). Thus, the only amount covered by the subordination agreement is the balance on that loan.

Finally, it should be noted that 422, LLC was assigned the notes and the subordination agreement. Under general contract principles, "an assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. App. 2004). Because Citizens Bank assigned the notes to 422, LLC and along with it, its rights and defenses, 422, LLC now stands in first position to $213,302.79, the amount due under the term note. The Kenneth C. MacGillivray Trust stands in first position as to the remainder of the monies.

The matter of the meaning or effect on the signature of Maryann MacGillivray in her capacity as personal representative of the Kenneth C. MacGillivray estate presents a more complex issue which cannot be fully resolved by the Court, at least on the record before it. First, there is the matter of apparent and inherent conflicts of interest issues raised by the facts that (1) Citizens Bank was supposed to be a successor trustee of the Trust, but did not act as such nor affirmatively invoke a procedure to designate its successor, in a situation where it was a party to the subordination agreement itself; (2) Maryann MacGillivray was at once a beneficiary of the trust, the personal representative of said estate, and a beneficiary of the subordination agreement by way of the fact that her own corporate business (Debtor) was clearly and uniquely benefitted (in a manner arguably adverse to the interests of the other trust beneficiaries) by the subordination agreement; and (3) the other beneficiaries of the trust were not shareholders of the Debtor. Second, a search of the Court file seems to indicate that the two other beneficiaries of the trust did not any receive official notice of the motions to sell the property or to disburse the proceeds. What position they might take on what is before the Court is thus not known, but as

beneficiaries of the trust, particularly in light of the indicated conflicts of interest or relationships, the Court feels that they are entitled to be heard if they wish to be. Furthermore, there is the not yet fully explored issue as to exactly when the trust came into being, i.e. immediately upon the death of the deceased settlor, or at some later point during the probate proceedings, and how the answer might bear on the validity or effectiveness of Maryann MacGillivray's signature as it affects the trust and subordination agreement. Therefore the Court is setting an on the record status conference on September 13, 2006, at 11:00 a.m. to further discuss and develop procedures as to these latter aspects of the case. The trustee shall give notice thereof to the indicated other trust beneficiaries to whom the trustee shall send a copy of this opinion and its accompanying order.

**Entered: July 07, 2006**

                                       **/s/ Walter Shapero**
                               **Walter Shapero**
                               **United States Bankruptcy Judge**